UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24444-CIV-WILLIAMS/MCALILEY

DOROTHY BATTIE,

    Plaintiff,

vs.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,[1]

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff, Dorothy Battie, and Defendant, the Commissioner of Social Security (the "Commissioner"), both filed Motions for Summary Judgment (ECF Nos. 22, 23).[2] The Motions are fully briefed, and the Honorable Kathleen M. Williams referred the matter to me for a report and recommendation. (ECF Nos. 2, 25). I heard oral argument on the Motions on July 19, 2022. For the reasons set forth below, I recommend that the Court deny Plaintiff's Motion for Summary Judgment and grant the Commissioner's Motion for Summary Judgment.

---

[1] Kilolo Kojakazi became the Acting Commissioner of Social Security after this lawsuit was filed. *See* Social Security Administration, *The Acting Commissioner of Social Security*, https://www.ssa.gov/agency/commissioner.html. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kojakazi is automatically substituted for Andrew Saul as the defendant in this case.

[2] The Commissioner erroneously filed the same motion twice. (ECF No. 24).

I.     **Overview**

Plaintiff filed for disability insurance benefits and supplemental social security income in August 2017, alleging disability since July 28, 2017. Tr. 321-334.[3] Plaintiff's application was denied initially, and on reconsideration. Tr. 161-163, 165-167, 171-176, 178-183. Pursuant to Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on September 19, 2019. Tr. 37-87, 89. Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert.

On December 16, 2019, the ALJ issued a written decision in which she found that Plaintiff was not under a disability as defined in the Social Security Act. Tr. 12-36. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 1-6, which made the ALJ's decision the final decision of the Commissioner.

Plaintiff now asks this Court to reverse the Commissioner's decision and remand for an award of benefits, or alternatively, for the ALJ to reconsider the record and her conclusions. (ECF No. 22 at 18).[4]

II.    **Proceedings Before the Commission**

The Court has thoroughly reviewed the entire record in this action, which includes Plaintiff's medical records and the transcript of the hearing before the ALJ. Below, I reference those portions of the administrative record that are relevant to the issues I address. I first summarize the ALJ's decision.

---

[3] Citations to the transcript of proceedings before the Social Security Administration, filed at ECF No. 13, are to "Tr. [page #]."

[4] Citations to the parties' legal memoranda are to the CM/ECF-assigned page numbers, not to the original page numbers of filed documents.

The ALJ first found that Plaintiff has not engaged in substantial gainful activity since July 28, 2017, the date when Plaintiff states she became disabled. Tr. 18. The ALJ next found that Plaintiff has the severe impairments of asymptomatic HIV, type II diabetes, arthritis, obesity/status post gastric sleeve 9/12/2018, reconstruction of weight-bearing joint, and bipolar disorder. *Id.* The ALJ then found that none of these impairments, nor any combination of impairments, met or medically equaled the criteria of any impairment identified in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ next determined Plaintiff's residual functional capacity ("RFC")[5], and Plaintiff challenges the manner in which she arrived at this decision. Specifically, the ALJ concluded that Plaintiff can perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with certain physical, mental, and environmental limitations. Tr. 20. As relevant here, the ALJ found she has these limitations:

1) She is able to understand, remember, and carry out simple, routine, repetitive tasks and instructions;

2) She is able to sustain attention and concentration for 2-hour periods at a time and for 8 hours in the workday on simple, routine, repetitive tasks and instructions;

3) She is able to respond appropriately to supervision;

4) She can have occasional interaction with the public on routine matters;

5) She can maintain regular attendance and be punctual within customary tolerances; and

---

[5] The RFC is the ALJ's assessment, based on all relevant evidence, of the claimant's ability to work despite her impairments. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

      6) She can perform activities within a schedule.

*Id.*

In the final step of her analysis, the ALJ posed a hypothetical to the vocational expert that reflected Plaintiff's age, education, work experience and RFC. Tr. 75-76, 78. The vocational expert testified that this hypothetical individual could work as a table worker, stuffer or addresser. Tr. 78. To be able to do this work, one must not miss more than one day of work per month. Tr. 82. Based on the vocational expert's testimony, and given Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff is not capable of performing her past relevant work, but she is able to perform other jobs that exist in significant numbers in the national economy. Tr. 27-28. On this reasoning, the ALJ concluded that Plaintiff was not disabled. Tr. 28.

**III.   Analysis**

The ALJ must follow these five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520 when she evaluates a claim for disability benefits:

    1.    Is the claimant performing substantial gainful activity? If not, the ALJ next determines;

    2.    Does the claimant have a severe impairment? If the claimant does, the ALJ next considers;

    3.    Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled; if not, the ALJ must determine the claimant's RFC; and then determine;

    4.    Based on the RFC, can the claimant perform her past relevant work? If so, she is not disabled. If she cannot perform her past relevant work, the ALJ must finally determine;

     5.     Whether, based on her age, education, and work experience, and the RFC, can the claimant perform other work of the sort found in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The Court has two tasks when it reviews an ALJ's decision: it must determine whether the ALJ applied the correct legal standard, and whether substantial evidence in the record supports the ALJ's factual findings. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). Regarding the latter, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The measure of substantial evidence is "more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips,* 357 F.3d at 1240 n.8 (citation omitted). This standard does not permit a reviewing court to consider only those parts of the record that support the ALJ; the court must view the entire record and consider evidence which detracts from the evidence relied on by the ALJ. *Mackie v. Astrue*, No. 07-cv-00098, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008). The standard is, in effect, a presumption in favor of the ALJ's findings of fact. That is, so long as the ALJ's decision is supported by substantial evidence, the court must affirm, "even if the court finds that the proof preponderates against the decision." *Perez v. Comm'r of Soc. Sec.*, No. 06-CV-1648, 2008 WL 191036, at *5 (M.D. Fla. Jan. 22, 2008) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

In contrast, the Court does not apply a presumption in favor of the ALJ's legal conclusions. The Court must reverse if the ALJ incorrectly applied the law, or if the

5

ALJ's decision does not provide sufficient reasoning so that the Court can determine whether the ALJ properly applied the law. *Id.*

At the conclusion of its review, the Court has the authority to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, at *5; 42 U.S.C. § 405(g).

The parties agree that the ALJ applied the correct legal standard. Plaintiff's challenge is limited to the ALJ's factual findings regarding her mental impairments.[6] Specifically, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate (1) Plaintiff's subjective statements about her symptoms and (2) the medical opinions of her psychiatrist, Dr. Joseph Poitier, M.D., her psychologist, Dr. Benjamin Isom, Psy.D., and state agency psychological consultants, Drs. Robert Hodes, Ph.D. and Michael Plasay, Ph.D. I address first her argument regarding the medical opinions, and I start with the applicable law.

### A. Substantial evidence supports the ALJ's evaluation of the medical opinions

In 2017, the Commissioner issued a new regulation effective for claims filed on or after March 27, 2017, that changed how an ALJ evaluates medical opinions. Both parties agree it applies here.

The regulation provides that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). This abrogated the

---

[6] Plaintiff does not challenge the ALJ's findings regarding her physical impairments. (ECF No. 22 at 2 n.5).

6

"treating-physician rule," which had required an ALJ to defer to the medical opinions of treating physicians when determining whether an individual is disabled under the Social Security Act. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022). The new regulation thus instructs the ALJ "to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness." *Id.*

The ALJ must consider these factors when determining the persuasiveness of a medical opinion: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) the medical source's specialization and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). However, the most important factors are supportability and consistency, and the ALJ must explain how she considered them. 20 C.F.R. § 404.1520c(b)(2). When a medical source provides multiple opinions, the ALJ need not assess the supportability and consistency of each opinion; rather, the ALJ may consider the medical opinions together in a single analysis. 20 C.F.R. § 404.1520c(b)(1).

Supportability refers to "the extent to which a medical source has articulated support for the medical source's own opinion". *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-cv-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency looks to "the relationship between a medical source's opinion and other evidence within the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). In sum, the ALJ must explain "whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record." *Id.* (citation omitted).

### 1. Drs. Joseph Poitier and Benjamin Isom

Both Drs. Poitier and Isom completed medical questionnaires in which they opined that Plaintiff has significant mental impairments, and these documents support Plaintiff's claim of disability. In her analysis of Plaintiff's RFC, the ALJ rejected opinions in these documents as unpersuasive, and Plaintiff argues that the ALJ failed to properly support her reasons for doing so. (ECF No. 22 at 11-15). I disagree.

One of those questionnaires is Dr. Poitier's February 2018 Mental Impairment Questionnaire.[7] In her decision, the ALJ focused on the doctor's opinions there that Plaintiff "has marked and extreme limitations in almost all functional domains and would be absent from work more than three times per month." Tr. 25. This is how the ALJ explained why she was not persuaded:

> This opinion is not persuasive because it is inconsistent with and not supported by the clinical notes from this source (Ex. 14F/2, 15F; 20F, 28F). For example, Dr. Poitier noted that the depressive disorder was in partial remission (Ex. 14F; 15F; 20F). Mental status examinations often document intact cognitive functioning and fund of knowledge, normal mood with no signs of either depression or mood elevation, intact associations, logical thinking, intact memory and judgment with cooperative attitude and intact social judgment, although short attention span was sometimes noted (Ex 14F; 15F; 20F; 28F). The opinion is also inconsistent with evidence from

---

[7] In the Questionnaire, Dr. Poitier diagnosed Plaintiff with major depression and wrote that she suffered from "depressed mood", "persistent or generalized anxiety", "difficulty thinking or concentrating", "easy distractibility" and psychomotor "retardation". Tr. 1454. He wrote that Plaintiff has moderate-to-marked or marked limitations in her ability to engage in numerous mental activities in a "competitive environment". Tr. 1456. Those limitations include Plaintiff's ability to: "Understand and remember one-to-two step instructions"; "Maintain attention and concentration for extended periods"; "Accept instructions and respond appropriately to criticism from supervisors"; "Interact appropriately with the public"; and "Perform activities within a schedule and consistently be punctual". *Id*. Dr. Poitier also opined that Plaintiff would miss work more than three times per month. Tr. 1457.

8

> other sources (See, e.g., Ex. 36F/37, 38; 37F/8, 10, 26, 34, 38) and other substantial evidence of record discussed throughout this decision. The claimant's mental status examinations are generally stable, revealing intact short-term memory, long-term memory, and judgment, as well as no suicidal or homicidal ideations (Ex. 14F/2, 20F/34, 36, 38; 33F/3).

Tr. 25.

In this analysis the ALJ first compares Dr. Poitier's opinions in his Questionnaire with his own treatment notes from other visits he had with Plaintiff, and finds that the latter is inconsistent with, and does not support, his opinions in the Questionnaire, and he provides an example. This follows the ALJ's more in depth review of years of the doctor's treatment notes, on the prior page of her decision. *See* Tr. 24. There, the ALJ identified multiple findings of Dr. Poitier that she viewed as inconsistent with his conclusions in his February 2018 Mental Impairment Questionnaire.[8]

In her analysis, the ALJ then turns to treatment records of other medical providers and cites multiple records that are also inconsistent with, and do not support, Dr. Poitier's February 2018 Questionnaire. Tr. 25. This includes treatment records of Dr. Marc Joseph who noted that Plaintiff was not depressed, feeling down or anxious, or had problems with her memory or concentration. Tr. 1801. Dr. Gordon Dickinson's records document this: "[Plaintiff] is oriented to person, place, and time. No distress ... She has a normal mood and affect. Her behavior is normal. Judgment and thought content normal."

---

[8] Indeed, Dr. Poitier's clinical notes, which span 2012 to 2019, often include remarks such as: "Mood presents as normal with no signs of either depression or mood elevation"; "Affect is appropriate, full range, and congruent with mood"; "Cognitive functioning and fund of knowledge are intact"; "Short-and long-term memory are intact, as is ability to abstract and do arithmetic calculations"; "fully oriented", "Judgment appears intact"; and "no signs of hyperactive or attentional difficulties". *See, e.g.*, Tr. 1464-1470.

9

Tr. 1854-55. Additionally, records of Arturo Rojas, PA-C, state: "No depressive symptoms, no anxiety symptoms, no sleep disturbances, no changes in thought content.... Well appearing, well nourished, in no acute distress. Alert and oriented ... pleasant mood with congruent affect, recent and remote memory intact, appropriate judgment and [i]nsight." Tr. 1693. These physicians were not Plaintiff's mental health providers. Social Security regulations, however, do not limit the ALJ to consideration of only Plaintiff's mental health providers. To the contrary, they instruct the ALJ to "consider all evidence in [Plaintiff's] case record" and to "not defer or give any specific evidentiary weight, including controlling weight," to Plaintiff's treating physicians. 20 C.F.R. §§ 404.1520, 404.1520c(a).

      The ALJ's citation to particular exhibits, with a general description of the information in those exhibits, is an appropriate way for her to explain how she considered the supportability and consistency factors. The medical records in Plaintiff's case, like most social security disability claims, are voluminous, and it is not practical for ALJ's to write a detailed analysis of every – or even most – records.

      Turning to Dr. Isom, Plaintiff's treating psychologist, the ALJ identified three opinions she did not credit. The first is found in Dr. Isom's November 2017 Mental Medical Source Statement that Plaintiff "is unable to meet competitive standards in almost all functional domains", and the second is in his August 2019 Psychological Impairment Questionnaire, that Plaintiff "has moderate to marked mental functional limitations in all functional domains and would be absent from work more than three

times per month". Tr. 25. Last is a November 2019 letter from Dr. Isom which states Plaintiff "has intense anxiety, psychomotor retardation, and poor concentration". *Id.* [9]

The ALJ then proceeds, at considerable length, to identify clinical notes of Dr. Poitier, records of other medical providers, and Plaintiff's testimony regarding her daily activities, that the ALJ finds inconsistent with, and not supportive of these opinions.

As with her analysis of Dr. Poitier's opinions, the ALJ cites multiple exhibits of clinical notes, treatment notes and mental status examinations of Dr. Poitier that do not support, or are inconsistent with, Dr. Isom's opinions. Tr. 25.

Regarding Plaintiff's activities of daily living, this is an example of what the ALJ wrote:

> Dr. Isom's statements are not persuasive as they are inconsistent with the claimant's acknowledged activities and clinical notes discussed elsewhere in this decision. For example, as to social functioning, she testified that she goes to church weekly, goes to the park, and goes shopping. She drives and does household chores, including cooking (Ex. Hearing testimony). She is a foster parent and continues receive multiple new foster children through May 2019 (Ex. 37F at 7).

*Id.* From this, the ALJ suggests that Plaintiff's daily activities indicate she has a greater capacity for social functioning, than do Dr. Isom's opinions.

Plaintiff argues the ALJ improperly placed "undue weight" on Plaintiff's activities of daily living. (ECF No. 22 at 14). As authority for this argument, Plaintiff cites *Schink*

---

[9] The ALJ also finds that a letter dated August 11, 2017, written by Dr. Isom, is persuasive, and that the persuasive value of other subsequent letters cannot be assessed. Tr. 26. Plaintiff does not challenge these findings.

*v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019), which Plaintiff states is authority "that ALJs should not place undue weight on a claimant's activities of daily living as contrary to a finding of mental disability." (ECF No. 22 at 13-14). *Schink*, however, did not set a standard for an ALJ's consideration of a claimant's daily activities, when evaluating a claim of disability based on mental and emotional limitations. *Schink* was decided under the old "treating-physician rule" and thus the context in *Schink* was different than here. The *Schink* Court did consider a claimant's daily activities—mostly solitary activities such as watching television, walking the dog, and cooking—as a factor in the analysis and observed that those activities "do not discount the treating physicians' opinions that Schink suffered significantly from mental impairments, particularly when he interacted with others." *Schink*, 935 F.3d at 1264.

The Court recognizes that Plaintiff's ability to complete tasks in settings that are less demanding than a typical work setting "does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. pt. 404, subpt. P. app. 1, § 12.00(C)(6)(b). Here, the Court reads the ALJ's observations about Plaintiff's daily activities in context with the many medical records the ALJ also relied upon, for her conclusion that Dr. Isom's opinions were not persuasive.

In the end, Plaintiff's argument is that there is considerable evidence in the voluminous record that supports Drs. Poitier's and Isom's opinions. The Court does not disagree. For example, some of Dr. Poitier's clinical notes include these observations of Plaintiff: "anxious and/or depressed mood", Tr. 497; "anxious, sad, constricted, flat,

12

blunted, glum, doleful, and/or depressed affect", Tr. 498, 1007, 1349, 1351, 1353, 1461, 1462, 1463, 1465, 1470, 1763; "wary, attentive, tense, and anxious appearance/presentation", Tr. 1007, 1349, 1351, 1353, 1461, 1462, 1463, 1465, 1470; "psychomotor abnormalities", Tr. 1349, 1351; "inattentiveness", Tr. 1353; and "short attention span", Tr. 1353, 1461, 1462, 1463, 1465, 1470. In her decision, the ALJ identifies many instances of evidence like this, but as noted, she also identifies considerable evidence that Plaintiff is better able to function than Drs. Isom and Poitier expressed in their opinions the ALJ found unpersuasive.

In effect, Plaintiff asks the Court to reweigh the evidence and a decide the question of Plaintiff's disability anew. The Court is not empowered to do this. It cannot substitute its judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210. So long as substantial evidence supports the ALJ's decision, the Court must affirm, "even if the proof preponderates against it." *Phillips*, 357 F.3d at 1240 n.8. The Court concludes that the ALJ identified substantial evidence to support her conclusion that Drs. Poitier's and Isom's opinions are unpersuasive.

### 2. Drs. Robert Hodes and Michael Plasay

Two non-examining state agency psychologists, Drs. Hodes and Plasay, provided opinions consistent with the ALJ's finding that Plaintiff is not disabled. Plaintiff argues the ALJ "did not meaningfully articulate how [their] opinions are supported and consistent with the record…." (ECF No. 22 at 14-15). I agree.

In her decision, the ALJ cites their reports and writes that Drs. Hodes and Plasay "opined that [Plaintiff] has mild to moderate mental functional limitations." Tr. 24.[10] She then concludes that their opinions "are persuasive as generally consistent with the available evidence of record." *Id.* The ALJ makes no mention whether she finds adequate support for their conclusions. The only specific finding she makes (that is relevant here) is that Plaintiff's "vocabulary and fund of knowledge indicate cognitive functioning in the normal range ... and there are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process", and she cites Dr. Poitier's clinical notes for support. Tr. 25. The ALJ's recognition that Plaintiff does not suffer from psychosis misses the mark. Plaintiff does not claim to suffer from hallucinations or delusions, or that she does not function cognitively in the normal range. She does claim to suffer from other mental and psychological impairments that interfere with her ability to work, and the ALJ does not articulate why the state examiner's opinions are supported and consistent with the overall record. Conclusory statements about consistency and supportability are insufficient to show that substantial evidence supports the ALJ's decision. *See Pierson v. Comm'r of Soc. Sec.*, 19-cv-01515, 2020 WL 1957597, at *4 (M.D. Fla. Apr. 8, 2020). The ALJ must articulate factual support for her conclusion. *Id.*;

---

[10] The non-examining experts' findings include that Plaintiff is "[n]ot significantly limited" in her ability to "carry out very short and simple instructions", "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances", and "interact appropriately with the general public", and that she is "[m]oderately limited" in her ability to "maintain attention and concentration for extended periods" and "accept instructions and respond appropriately to criticism from supervisors." Tr. 101-02, 136-37.

20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions ....").

The ALJ also acknowledges that these providers "did not have the benefit of evidence submitted at the hearing level." Tr. 24. This is a recognition that Dr. Plasay prepared his report in January 2018, and Dr. Hodes prepared his in September 2017, and thus they did not consider evidence that accrued between then and the September 2019 hearing. This latter comment appears to be a recognition that the ALJ must consider whether evidence she receives after the medical source formed his opinion makes the opinion "more or less persuasive." 20 C.F.R. § 404.1520c(5).

I conclude that the ALJ's error here was harmless because there is substantial evidence in the record that support's the ALJ's endorsement of Dr. Hodes' and Plasay's opinions. The evidence that the ALJ identified in her consideration of the opinions of Drs. Isom and Poitier supports the ALJ's conclusory finding that the state agency consultants were persuasive. Courts should "decline[] to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (quoting *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981)). Further findings regarding their opinions therefore would not change or contradict the ALJ's conclusion. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("When, however, an incorrect application of the regulations results in harmless error because the correct

15

application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").

### B. Substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms

Plaintiff argues that the ALJ did not properly assess Plaintiff's testimony regarding her symptoms. (ECF No. 22 at 16-18).

Plaintiff testified that she is unable to work because she "[does not] like people." Tr. 56. She further testified that she has "memory problems", "can't stay focused", "can't remember the simplest stuff" and "forget[s] everything." Tr. 54, 57. She also testified that she "[does not] come out the door" and "[does not] want to see [anybody]." Tr. 64. The ALJ noted these, and other symptoms, in her decision. Tr. 21.

A claimant's subjective complaints about her symptoms "will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a). The ALJ must undertake a two-step analysis of a claimant's symptoms.[11] As a first step of this analysis, the ALJ must determine if the claimant has "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms." 20 C.F.R. § 404.1529(b). The ALJ made that finding here. Tr. 21 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms….").

Next, the claimant must also produce evidence of either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition

---

[11] The Social Security Administration defines a symptom "as the individual's own description or statement of his or her physical or mental limitations." SSR 16-3 (2016 WL 1119029).

16

or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see* 20 C.F.R. § 404.1529. This requires the ALJ to evaluate the intensity and persistence of Plaintiff's symptoms to determine how they limit the claimant's ability to work. 20 C.F.R. § 404.1529(c). To do this, the ALJ considers whether inconsistencies exist between the claimant's statements and the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4).

The ALJ found that the record evidence does not support Plaintiff's asserted symptoms. She wrote:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*. Accordingly, these statements have been found to affect claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. The objective medical findings contained in the claimant's medical records simply do not support a finding of severe symptoms as the claimant alleged. While the claimant's impairments are documented in the claimant's medical records, the severity required to necessitate a finding of disability was not present. The claimant's subjective allegations are contradicted by the objective findings.

Tr. 21. (emphasis added). In her decision, the ALJ reviews medical evidence in the record and Plaintiff's activities of daily living, as noted above. As Plaintiff notes in her Motion, Social Security Regulations direct the ALJ to consider a number of factors, to include the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate … symptoms." (ECF No. 22 at 15) (citing SSR 16-3 (2016 WL

17

1119029)). The ALJ did so as follows: "Her prescription dosages do not appear to have been adjusted often or greatly, which suggest that the claimant's condition is well controlled on her current therapy. (Ex. 14F/2, 20F/34, 36, 38, 28F)." Tr. 26.

The ALJ ultimately concludes that [w]hile the claimant has some functional limitations, her complaints are not consistent with the evidence of record to the degree that the claimant is precluded from performing all work-related activity.... The claimant also alleges disabling psychiatric symptoms, but the objective findings do not support that level of limitation. (Ex. 14F/2, 20F, 28F)." Tr. 26. Notably, the ALJ did not wholly discount Plaintiff's reported symptoms. She wrote: "Although the undersigned does not find that the claimant has disabling functional limitations, the [RFC] has been reduced to account for the claimant's impairments and reported symptoms." Tr. 27.

After a careful review of the ALJ's decision and the record as a whole, I conclude that substantial evidence supports the ALJ's assessment of Plaintiff's testimony regarding her symptoms.

### IV.     Recommendations

Based on the foregoing, I respectfully recommend that the Court (1) **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 22), and (2) **GRANT** Defendant's Motion for Summary Judgment (ECF No. 23).

### V.     Objections

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a

*de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULY RECOMMENDED in chambers at Miami, Florida, this 9th day of August 2022.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Kathleen M. Williams
    Counsel of record